BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

MICHAEL C. ORMSBY
United States Attorney

TERRY M. HENRY
Assistant Branch Director

ANDREW I. WARDEN (IN Bar No. 23840-49)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C. 20530
Tel: (202) 616-5084
Fax: (202) 616-8470
andrew.warden@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SULEIMAN ABDULLAH SALIM, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JAMES E. MITCHELL and JOHN JESSEN, <br><br> Defendants. | No. 2:15-CV-286-JLQ <br><br> STATEMENT OF INTEREST OF THE UNITED STATES <br><br> Motion Hearing: <br> April 22, 2016 at 9:00 a.m. <br> Spokane, Washington |

UNITED STATES' STATEMENT OF INTEREST - 1

**INTRODUCTION**

Pursuant to 28 U.S.C. § 517,[1] the United States of America submits this Statement of Interest to advise the Court of the United States' interest in the discovery issues presented in this case.

**BACKGROUND**

This case involves an action brought by three former detainees seeking damages related to their alleged treatment in the Central Intelligence Agency's ("CIA") former detention and interrogation program. Neither the United States Government nor the CIA is a defendant in this case. Instead, Plaintiffs have brought this action against two individual psychologists, whom Plaintiffs allege worked as contractors for the CIA and, in that capacity, designed, implemented, and participated in the detention and interrogation program. *See* Complaint, ECF No. 1 at ¶¶ 1-4, 12-13. Plaintiffs

---

[1] Section 517 provides that the "Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517. A submission by the United States pursuant to this provision does not constitute intervention under Rule 24 of the Federal Rules of Civil Procedure.

UNITED STATES' STATEMENT OF INTEREST - 2

raise multiple claims for violations of international law under the Alien Tort Statute and seek compensatory and punitive damages. *See id*. at ¶¶ 168-185.

On December 15, 2015, Plaintiffs and Defendants filed a joint motion to establish a briefing schedule for Defendants' motion to dismiss and to stay initial discovery pending a decision on Defendants' motion. *See* ECF No. 15. With respect to discovery in the case, Defendants represented that they believe discovery will be "complex and costly, likely involving issues relating to classified materials and state secrets." *Id*. at 2. Defendants also stated that they "anticipate seeking discovery involving classified information and documents in the possession of the CIA, other United States government agencies and/or foreign governments." *Id*. at 4. For their part, Plaintiffs stated that they "believe all the information required to adjudicate this matter is available on the public record and disagree that discovery of classified information and/or state secrets will be required." *Id*. at 5. Notwithstanding the parties' disagreement over the need for and scope of any discovery, which the parties acknowledged "will be disputed and require resolution through motion practice," the parties agreed to stay discovery during the pendency of the motion to dismiss. *Id*. at 4, 7.

On December 21, 2015, the Court granted the parties' motion to stay discovery. *See* Order Setting Briefing Schedule, ECF No. 22. In doing so, the Court noted that it would "revisit whether a stay of discovery is appropriate after the Motion to Dismiss is filed." *Id*. at 2-3.

UNITED STATES' STATEMENT OF INTEREST - 3

On March 2, 2016, the parties completed briefing on the motion to dismiss. *See* ECF Nos. 27-29. The next day, on March 3, 2016, the Court issued an order partially lifting the stay of discovery, concluding that "this matter should not be unduly delayed" during the pendency of the motion to dismiss. *See* Order Directing Filing of Discovery Plan and Proposed Schedule, ECF No. 30 at 1-2. The Court directed the parties to meet and confer on a joint discovery and scheduling plan by March 25, 2015, and then file a joint plan, or competing plans in the event of a disagreement, by April 8, 2016. *See id*. at 2. Among other things, the Court directed the parties to address the need for any "special procedures" that would govern discovery in the case. *Id*. The Court also scheduled a two-hour hearing on April 22, 2016, to address both the motion to dismiss and the proposed discovery plan and schedule. *See id*. In the meantime, the Court ordered that the "stay of discovery shall remain in effect as to written discovery and depositions." *Id*. However, the Court stated the "parties may begin exchange of initial disclosures pursuant to Rule 26(a)(1), but if the parties are still in agreement as to withholding such disclosures, they may withhold such disclosures pending the April 22, 2016 hearing." *Id*.

## **DISCUSSION**

The United States respectfully requests that that the Court consider the interests of the United States when formulating a discovery plan and schedule in this case. This case presents a complex situation in which Defendants likely have in their knowledge or possession information that is classified, or which could tend to reveal

UNITED STATES' STATEMENT OF INTEREST - 4

classified information, and that may be called for in discovery but which, as discussed below, the Defendants are prohibited from disclosing, including in this litigation.

Discovery in this case will center around the CIA's former detention and interrogation program, a covert action program authorized by the President of the United States in 2001, as well as Defendants' role in that program.  Over time, certain information about the detention and interrogation program has been officially declassified by the United States and released to the public.  Most recently, on December 9, 2014, the Senate Select Committee on Intelligence ("SSCI") publicly released a redacted version of the Findings and Conclusions and Executive Summary of the Committee's Study of the CIA's Detention and Interrogation Program ("Executive Summary"), at http://www.intelligence.senate.gov/press/committee-releases-study-cias-detention-and-interrogation-program.  The President determined that the Executive Summary should be declassified with the appropriate redactions necessary to protect national security.  The Director of National Intelligence and the CIA, in consultation with other Executive Branch agencies, conducted a declassification review of the Executive Summary and transmitted a redacted, unclassified version of it to the SSCI.  Public release of the Executive Summary by the SSCI – along with a separate redacted report from minority committee members and the CIA's response to the Executive Summary – had the effect of disclosing a significant amount of information concerning the detention and interrogation program that the Executive Branch had declassified.  For example, some general information

UNITED STATES' STATEMENT OF INTEREST - 5

concerning the interrogation techniques and conditions of confinement applied to detainees in the detention and interrogation program, including Plaintiffs, is no longer classified.

Although certain categories of information about the detention and interrogation program have been declassified by the Executive Branch, other categories of information about the program remain classified and were redacted from the Executive Summary due to the damage to national security that reasonably could be expected to result from the disclosure of that information. *See* Executive Order 13526, Classified National Security Information, 75 Fed. Reg. 707 (Dec. 29, 2009). In connection with the ongoing military commission prosecution against the five former CIA detainees accused of committing the attacks on September 11, 2001, the Government has explained that these categories include, but are not limited to: names, identities, and physical descriptions of any persons involved with the capture, transfer, detention, or interrogation of detainees or specific dates regarding the same; the locations of detention sites (including the name of any country in which the detention site was allegedly located); any foreign intelligence service's involvement in the detainees' capture, transfer, detention, or interrogation; and information that would reveal details surrounding the capture of detainees other than the location and date. *See* Government's Mot. to Amend Protective Order, *United States v. Mohammed et al.*, Dkt No. AE 013RRR (U.S. Mil. Comm. Jan. 30, 2015), at www.mc.mil/Portals/0/pdfs/KSM2/KSM%20II%20(AE013RRR(Gov)).pdf

UNITED STATES' STATEMENT OF INTEREST - 6

The discovery requests in this case are likely to center on the operational details and internal workings of the detention and interrogation program.  While the United States possesses classified information about the program, this case also presents an additional complicating factor from a discovery perspective because Defendants, by virtue of their role as CIA contractors in the program, also likely have in their knowledge and possession information belonging to the United States that is classified, or which could tend to reveal classified information, that they are prohibited from disclosing.[2]  Defendants signed nondisclosure agreements with the United States that prohibit them from disclosing classified information without authorization from the United States.  *See Am. Foreign Serv. Ass'n v. Garfinkel*, 490 U.S. 153, 155 (1989) (per curiam) ("As a condition of obtaining access to classified information, employees in the Executive Branch are required to sign 'nondislosure agreements' that detail the employees' obligation of confidentiality and provide for penalties in the event of unauthorized disclosure.")*; Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) (per curiam) (stating that the CIA's non-disclosure agreement is an "entirely appropriate exercise of the CIA Director's statutory mandate to protect intelligence sources and methods from unauthorized disclosure") (internal quotations omitted).  Further, various federal regulations and laws prohibit unauthorized disclosure of classified information.  *See, e.g.*, 18 U.S.C. §§ 793-94; 18 U.S.C. § 798;

---

[2] The fact that Defendants served as CIA contractors in the detention and interrogation program is unclassified.

UNITED STATES' STATEMENT OF INTEREST - 7

50 U.S.C. § 3121; Executive Order 13526.  Nonetheless, this information could be the subject of discovery requests from Plaintiffs or otherwise may be called for pursuant to Fed. R. Civ. P. 26(a)(1)(A) (initial disclosures), or be relevant to certain defenses Defendants may affirmatively raise.  *See, e.g.*, Detainee Treatment Act of 2005, 10 U.S.C. § 801, stat. note § 1004 (establishing a defense in any civil action for Government agents engaged in interrogation or detention practices that were officially authorized and determined to be lawful at the time they were conducted).  Further, Defendants' view of whether the information they may have in their knowledge or possession is now declassified, following public release of the Executive Summary, may not be accurate or consistent with determinations made by the Executive Branch with regard to such information, and as a result, a risk exists that classified information could inadvertently be disclosed by Defendants in this litigation.

In the event discovery proceeds through this complicated landscape, including in the form of party discovery or disclosures from Defendants, important interests of the United States would be implicated.  The United States has a strong interest, of course, in protecting its classified, sensitive, or privileged information from disclosure.  *See* Fed. R. Civ. P. 45(d)(3)(A)(iii); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 780 (9th Cir. 1994).  Indeed, the CIA has "sweeping" and "broad power to protect the secrecy and integrity of the intelligence process" in furtherance of the national security.  *CIA v. Sims*, 471 U.S. 159, 169-170 (1985); *see Berman v. CIA*, 501 F.3d 1136, 1140 (9th Cir. 2007); *see also* 50 U.S.C. § 3024(i)(1)

UNITED STATES' STATEMENT OF INTEREST - 8

("The Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure."). Given the subject matter at issue in this case, the Government has a particularized interest in preventing unauthorized disclosures that would harm national security interests or compromise or impose undue burdens on intelligence and military operations. *See Dep't of Navy v. Egan*, 484 U.S. 518, 527, (1988) ("This Court has recognized the Government's 'compelling interest' in withholding national security information from unauthorized persons in the course of executive business.") (citing cases).

Further, any decision by the Government to consider the release of intelligence information requires careful scrutiny, sometimes by multiple Government agencies. This is especially so where the significance of one item of information frequently depends upon knowledge of other items of information, the value of which cannot be appropriately considered without knowledge of the entire landscape. As the Supreme Court explained in *Sims*, "what may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context." 471 U.S. at 178 (internal citations and quotations omitted). Accordingly, the process by which the Government evaluates and responds to requests for disclosure of information related to the detention and interrogation program is highly exacting and is essential in order to deny hostile adversaries the ability to piece together bits of information that may reveal

UNITED STATES' STATEMENT OF INTEREST - 9

information that remains classified.  This process is certainly not typical for discovery in an ordinary civil matter.

In the event a party is dissatisfied with the Government's decisions regarding the disclosure of privileged or classified information and moves to compel access to or disclosure of such information, the Government would need sufficient time to consider whether invocation of privilege, including the state secrets privilege, would be appropriate to prevent the disclosure of the requested information.  *See Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1077-84 (9th Cir. 2010) (en banc).  The Supreme Court has long recognized the Government's ability to protect state secrets from disclosure in the context of civil discovery.  *United States v. Reynolds*, 345 U.S. 1 (1953); *Gen. Dynamics Corp. v. United States*, 131 S. Ct. 1900 (2011).  The privilege allows the Government to prevent the disclosure of national security information that would otherwise be discoverable in civil litigation, where there is a "reasonable danger that compulsion of the evidence will expose [state secrets] which, in the interest of national security, should not be divulged." *Reynolds*, 345 U.S. at 10.[3]  Any decision concerning whether, when, or to what extent this privilege should

---

[3] The privilege, where it applies, is absolute and cannot be overcome by the perceived need of a litigant to access or use the information at issue. *See Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998) ("Once the privilege is properly invoked, and the court is satisfied as to the danger of divulging state secrets, the privilege is

UNITED STATES' STATEMENT OF INTEREST - 10

be invoked in litigation in order to protect national security is no ordinary or simple occurrence; rather, it requires a searching review at the very highest levels of Government.

In addition to the judicial authority recognizing the significance of the state secrets privilege and the need for the Executive to invoke it with prudence, *Reynolds*, 345 U.S. at 7 (the state secrets privilege is "not to be lightly invoked"), the Executive Branch's own internal procedure provides for a rigorous, layered, and careful process for review of any potential state secrets privilege assertion, including personal approval from the head of the agency asserting the privilege as well as from the Attorney General. *See* Memorandum from the Attorney General to the Heads of Executive Departments and Agencies on Policies and Procedures Governing Invocation of the State Secrets Privilege (Sept. 23, 2009) ("State Secrets Guidance"), at http://www.justice.gov/opa/documents/state-secret-privileges.pdf; *see also Mohamed*, 614 F.3d at 1077, 1090 (citing Guidance). Under this process, the U.S. Department of Justice will defend an assertion of the state secrets privilege in litigation only when "necessary to protect against the risk of significant harm to national security." *See* State Secrets Guidance at 1. The Attorney General also has established detailed procedures for review of a proposed assertion of the state secrets privilege in a civil case. Those procedures require submissions by the relevant

absolute[.]"). Rather, when the privilege is successfully invoked, the evidence subject to the privilege is "completely removed from the case." *Id*.

UNITED STATES' STATEMENT OF INTEREST - 11

government departments or agencies specifying "(i) the nature of the information that must be protected from unauthorized disclosure; (ii) the significant harm to national security that disclosure can reasonably be expected to cause; [and] (iii) the reason why unauthorized disclosure is reasonably likely to cause such harm." *Id.* at 2.  The Department of Justice will only defend an assertion of the privilege in court with the personal approval of the Attorney General following review and recommendations from a committee of senior Department of Justice officials.  *Id*. at 3.  The Court of Appeals has emphasized the importance of this guidance.  *See Mohamed*, 614 F.3d at 1080 ("Although *Reynolds* does not require review and approval by the Attorney General when a different agency head has control of the matter, such additional review by the executive branch's chief lawyer is appropriate and to be encouraged.").  Given the highly significant determinations that must be made in deciding whether to assert the state secrets privilege, the Government has a strong interest in ensuring that adequate time is provided so that senior Executive Branch officials can carefully consider whether the privilege should be asserted without rushing to a hasty or inaccurate decision.

In light of these unique circumstances, this case is likely to require special procedures to protect against the disclosure of classified or privileged information belonging to the United States during party discovery, and for litigating any disputes over whether such information may be disclosed.  Consequently, the United States recommends that any discovery plan entered in this case include certain special

UNITED STATES' STATEMENT OF INTEREST - 12

procedures that would enable the Government to have the opportunity to review any proposed disclosure of information by Defendants during party discovery for classified or privileged information and, if necessary, to take steps to protect against disclosure. Absent such procedures, there exists a risk of unauthorized disclosure of the United States' classified or privileged information.[4]

In an effort to reach consensus on this issue, undersigned counsel for the United States has initiated discussions with the attorneys for both Plaintiffs and Defendants regarding proposed protective measures for inclusion in the discovery plan. Among the protective measures under consideration and discussion are identifying those subject areas related to the detention and interrogation program that have been declassified and those that have not, thereby enabling the parties to tailor the litigation and discovery in this case, if appropriate, to information that has been declassified and would not implicate the United States' national security interests; permitting attorneys from the Department of Justice to attend depositions and assert objections where

---

[4] In describing these special procedures the United States does not waive any privileges, arguments, or defenses that it may assert to prevent disclosure of privileged information. Rather, the goal of these procedures is to provide a mechanism for the United States to assert any appropriate objections to prevent the unauthorized disclosure of privileged information and to streamline, or make as efficient as possible, any contested litigation over access to such information.

UNITED STATES' STATEMENT OF INTEREST - 13

appropriate to prevent improper disclosures; and permitting the United States to review any anticipated discovery disclosures by Defendants related to the detention and interrogation program in order to guard against the unauthorized disclosure of classified information. At this point in the discussions, the Government is optimistic that an agreement can be reached on at least some, though perhaps not all, of the Government's proposed procedures. Consequently, the Government respectfully requests that the Court permit the Government to continue to work with the parties to reach consensus on these special procedures prior to the Court establishing a discovery plan in this case. In order to be of assistance to the Court, undersigned counsel for the United States intends to attend the upcoming hearing set for April 22 to address this matter and any questions the Court may have of the Government. In the event the parties and the Government cannot reach agreement on certain procedures, the Government will be prepared to discuss options to promote the efficiency of any contested litigation over classified or privileged Government information in party discovery to which the Government may object to disclosure.

In addition to party discovery, this case is also likely to involve a substantial volume of third-party discovery requests directed to the CIA and perhaps other United States agencies related to the detention and interrogation program.[5] At this initial

---

[5] The foreword to Executive Summary states that Senate committee staffers reviewed over 6 million pages of CIA documents during a nearly four-year period while

UNITED STATES' STATEMENT OF INTEREST - 14

stage of proceedings, when the Government has not yet been served with any discovery requests, and no contested litigation is imminent, the Government does not know precisely how the discovery process against the United States will unfold, although each of the various interests discussed above would be implicated in such discovery. Where it is not a party to a suit, the United States has a strong interest in avoiding the unreasonable diversion of the Government's national security resources to satisfy the discovery demands of the parties. *See Exxon Shipping Co.*, 34 F.3d at 779 ("We acknowledge the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations."). In all events, the Government has a significant interest in ensuring that any third-party discovery proceeds in an efficient manner without the litigation itself imposing undue burdens on any agency carrying out a national security mission. To that end, because the United States is not a party to this case, the first step to either party in this case seeking information from the United States is for the requesting litigant to submit a so-called *Touhy* (*United States ex. rel. Touhy v. Ragen*, 340 U.S. 462 (1951)) request under the relevant agencies' governing regulations, describing the information sought so that the agency can properly consider the request. *See*, *e.g.*, 32 C.F.R. § 1905.4(c)-(d) (CIA)*; see also In re Boeh*, 25 F.3d 761, 763-64 (9th Cir. 1994); *Exxon Shipping*

---

compiling their report about the detention and interrogation program. *See* Executive Summary Foreword at 4.

UNITED STATES' STATEMENT OF INTEREST - 15

*Co.*, 34 F.3d at 780 n. 11 ("Because [5 U.S.C.] § 301 provides authority for agency heads to issue rules of procedure in dealing with requests for information and testimony, an agency head will still be making the decisions on whether to comply with such requests in the first instance [prior to court review]."). As explained above, given the potential volume and complex nature of the information that is likely to be sought in this case, the Government likely will need a substantial amount of time to identify any responsive information and then determine whether and to what extent that information can be provided or whether it must object to disclosure and, if necessary, assert privilege in response to a demand for the information. In the event a decision is made to produce responsive material, the production process is likely to require additional time because the intelligence information at issue here would be required to undergo a careful review, perhaps by multiple agencies, to ensure only unclassified and non-privileged information is released.

Finally, given the Government's compelling interest in protecting classified and other sensitive or privileged information from unauthorized disclosure, the Government opposes any suggestion to create special procedures that would permit the parties or their counsel to access classified information, such as by granting private attorneys security clearances and establishing secure facilities for the exchange, storage, and review of classified information by the parties. As the Court of Appeals has recognized, "[t]he decision to grant or revoke a security clearance is committed to the discretion of the President by law." *Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th

UNITED STATES' STATEMENT OF INTEREST - 16


Cir. 1990). There is no statutory authority that would permit or require such access in this context. For example, the Classified Information Procedures Act, 18 U.S.C. app. 3 ("CIPA"), is inapplicable in civil cases. *See* CIPA, Pub. L. No. 96-456, 94 Stat. 2025 (1980) ("An act to provide certain pretrial, trial and appellate procedures for criminal cases involving classified information."); *see also id*. § 3 ("Upon motion of the United States, the court shall issue an order to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case in a district court of the United States."). Indeed, the application of CIPA to civil litigation would be an impermissible construction of that statute, distorting both its language and legislative rationale and ignoring the distinction between criminal and civil litigation. Unlike criminal prosecutions, where a prosecutor can choose to cease prosecution rather than disclose classified information to a criminal defendant, in civil litigation like this when a litigant seeks classified information, the Government has no ultimate control over the continuation of the case. *See Reynolds*, 345 U.S. at 12. Accordingly, it would be inappropriate in this case to attempt to devise CIPA-like procedures that would require the Government to provide private parties with access to classified or otherwise protected national security information in the context of a civil damages action, particularly one in which the Government is not a party. *See Mohamed*, 614 F.3d at 1089 (upholding privilege assertion over classified information "no matter what protective procedures the district court might employ"); *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1204 (9th Cir. 2007) (holding that the

UNITED STATES' STATEMENT OF INTEREST - 17

district court erred in crafting procedures that attempted to "thread the needle" to enable a private party to use classified information in a civil action where a valid privilege assertion by the Government had been upheld); *Sterling*, 416 F.3d at 348 (rejecting request for "special procedures" to allow party access to classified information, noting that "[s]uch procedures, whatever they might be, still entail considerable risk" of "leaked information" and "inadvertent disclosure" that would place "covert agents and intelligence sources alike at grave personal risk").

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court consider the interests of the United States as it formulates the discovery plan in this case.


Dated: April 8, 2016                    Respectfully submitted,

                                        BENJAMIN C. MIZER
                                        Principal Deputy Assistant Attorney General

                                        MICHAEL C. ORMSBY
                                        United States Attorney


                                        TERRY M. HENRY
                                        Assistant Branch Director

                                         *s/ Andrew I. Warden*
                                        ANDREW I. WARDEN
                                        Indiana Bar No. 23840-49
                                        Senior Trial Counsel
                                        United States Department of Justice

UNITED STATES' STATEMENT OF INTEREST - 18

| | |
|---|---|
| 1 | Civil Division, Federal Programs Branch |
| 2 | 20 Massachusetts Avenue NW |
| | Washington, D.C. 20530 |
| 3 | Tel: (202) 616-5084 |
| | Fax: (202) 616-8470 |
| 4 | andrew.warden@usdoj.gov |
| 5 | |
| | Attorneys for the United States of America |

UNITED STATES' STATEMENT OF INTEREST - 19

# CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Dror Ladin:<br>Dladin@aclu.Org | Brian Paszamant:<br>Paszamant@blankrome.Com |
| Hina Shamsi:<br>Hshamsi@aclu.Org | Henry Schuelke, III:<br>Hschuelke@blankrome.Com |
| Jameel Jaffer:<br>Jjaffer@aclu.Org | James Smith:<br>Smith-Jt@blankrome.Com |
| La Rond Baker:<br>Lbaker@aclu-Wa.Org | Christopher Tompkins:<br>Ctompkins@bpmlaw.Com |
| Paul L Hoffman:<br>Hoffpaul@aol.Com | *Attorneys for Defendants* |
| Steven Watt:<br>Swatt@aclu.Org | |

*Attorneys for Plaintiffs*

　　　　　　　　　　　　　　　　　 */s/ Andrew I. Warden*
　　　　　　　　　　　　　　　　　ANDREW I. WARDEN
　　　　　　　　　　　　　　　　　Indiana Bar No. 23840-49
　　　　　　　　　　　　　　　　　Senior Trial Counsel
　　　　　　　　　　　　　　　　　United States Department of Justice
　　　　　　　　　　　　　　　　　Civil Division, Federal Programs Branch
　　　　　　　　　　　　　　　　　20 Massachusetts Avenue, NW
　　　　　　　　　　　　　　　　　Washington, D.C. 20530
　　　　　　　　　　　　　　　　　Tel: (202) 616-5084
　　　　　　　　　　　　　　　　　Fax: (202) 616-8470
　　　　　　　　　　　　　　　　　Attorney for the United States of America

UNITED STATES' STATEMENT OF INTEREST - 20