UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

SULEIMAN ABDULLAH SALIM, et al.,⁣ )
                                   )
                                   )  No.  CV-15-0286-JLQ
                  Plaintiffs,      )
                                   )  ORDER RE: MOTION TO DISMISS
                                   )
           vs.                     )
                                   )
                                   )
JAMES E. MITCHELL and JOHN         )
JESSEN,                            )
                                   )
                  Defendants.      )
_____ )

BEFORE THE COURT is Defendants' Motion to Dismiss (ECF No. 105).  The Motion has been fully briefed, and telephonic argument was held on January 19, 2017. Dror Ladin, Hina Shamsi, Steven Watt, and Emily Chiang appeared for Plaintiffs, with Mr. Ladin taking the lead.  James Smith, Brian Paszamant, Henry Schuelke, III, and Christopher Tompkins appeared for Defendants, with Mr. Smith taking the lead. Counsel did not appear for Interested Party, the United States of America.

**I.  Introduction and Procedural Background**

The Complaint in this matter alleges Plaintiffs Suleiman Abdullah Salim ("Salim"), Mohamed Ahmed Ben Soud ("Soud"), and Obaid Ullah ("Ullah")[1](collectively herein Plaintiffs) were the victims of psychological and physical torture.  Plaintiffs are all foreign citizens and bring these claims pursuant to the Alien Tort Statute, 28 U.S.C. §

---

[1]Ullah is the personal representative of the Estate of Gul Rahman who allegedly "died as a result of hypothermia caused by his exposure to extreme cold, exacerbated by dehydration, lack of food, and his immobility in a stress position." (Complaint ¶ 3).

ORDER - 1

1350.    Plaintiffs allege the Defendants, James Mitchell and John Jessen, "are psychologists who designed, implemented, and personally administered an experimental torture program for the U.S. Central Intelligence Agency." (Complaint, ¶ 1).

The Complaint was filed on October 13, 2015.  Defendants filed a Motion to Dismiss (ECF No. 27) in January 2016.  After briefing and oral argument, that Motion was Denied. (See Memorandum Opinion of April 28, 2016, at ECF No. 40).  Thereafter the court issued a Scheduling Order (ECF No. 59) and the parties have engaged in discovery.   A dispute between Defendants and the Central Intelligence Agency concerning the scope of a subpoena and document production led to additional litigation in case number 16-mc-0036-JLQ.   The document production was completed on December 20, 2016.  Trial in this matter is set for June 26, 2017.

The Defendants' instant Motion was filed on November 18, 2016, and contends the Military Commissions Act ("MCA"), specifically 28 U.S.C. § 2241(e)(2), deprives this court of jurisdiction over "non-habeas detention-related claims" brought by an alien when the alien was determined to have been properly detained by the United States as an "enemy combatant". (ECF No. 105, p. 1).  Plaintiffs' Response (ECF No. 12) contends the MCA does not apply for two primary reasons: 1) Defendants are not military servicemembers or government employees or agents, but are independent contractors; and 2) none of the three Plaintiffs were determined by an executive branch tribunal to have been properly detained as an enemy combatant. (ECF No. 120, p. 1).

**II.  Standard of Review**

As this is review of a motion to dismiss under Fed.R.Civ.P. 12, the Plaintiffs' factual allegations are taken as true, unless they do not pass the plausibility standard of *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Defendants bring the Motion pursuant to Fed.R.Civ.P. 12(b)(1) and argue the court lacks subject-matter jurisdiction due to operation of the MCA.  When reviewing a motion to dismiss pursuant to Rule 12(b)(1) this court may review evidence. *McCarthy*

ORDER - 2

*v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  Attacks on jurisdiction can be either facial, confining inquiry to the allegations in the complaint, or factual, permitting the court to look beyond the complaint. *Savage v. Glendale High School*, 343 F.3d 1036, 1040 n. 2 (9th Cir. 2003).  The parties have filed documentary evidence in support of, and in opposition to, the Motion and the court has considered those filings.

### III.  The Complaint

Because the central focus of the instant Motion To Dismiss is whether Plaintiffs were classified as "enemy combatants," and whether the Defendants were "agents" of the United States or independent contractors, the court sets forth the relevant allegations from the Complaint.  Salim is alleged to be a Tanzanian citizen who was detained in Somalia in March 2003, where he was working as a fisherman and trader. (Complaint ¶ 9).  The Complaint alleges Salim was released from U.S. custody in August 2008 and given a Department of Defense memorandum stating he had "been determined to pose no threat to the United States Armed Forces or its interests in Afghanistan." (*Id*.).

Soud is a Libyan citizen who was detained in Pakistan in 2003 and held by the U.S. Government until 2005. (*Id*. at ¶ 10).  The Complaint alleges Soud had fled Libya fearing persecution under the Gadaffi regime. (*Id*. at ¶ 117).  Rahman is alleged to have been an Afghan citizen who was living in a refugee camp in Peshawar, Pakistan.  He was allegedly taken into custody by the CIA in November 2002, in Pakistan. (*Id*. at ¶ 11).  The Complaint alleges he went into Islamabad for a medical appointment, and spent the night at a friend's home.  The friend's home was raided and Rahman was detained by joint United States and Pakistani forces. (*Id.* at ¶ 156).  Defendants Mitchell and Jessen are alleged to have worked as independent contractors for the CIA. (*Id.* at ¶¶ 12-13).  Plaintiffs allege Defendants "aided and abetted" and "conspired or acted together with agents of the United States" in subjecting Plaintiffs to torture, cruel, inhuman, and degrading treatment. (*Id*. at ¶¶ 170-171).

///

ORDER - 3

1

## IV.  Discussion

Defendants' Motion to Dismiss argues the action must be dismissed because the MCA divests the court of jurisdiction.  The two main areas of dispute between the parties are: 1) whether Defendants are "the United States or its agents"; and 2) whether Plaintiffs were "determined by the United States to have been properly detained as an enemy combatant"; both within the meaning of 2241(e)(2).

### A.  Military Commissions Act

The relevant statutory provision, 28 U.S.C. 2241(e)(2) provides:

> (2) Except as provided in paragraphs (2) and (3) of section 1005(e) of the Detainee Treatment Act of 2005 (10 U.S.C. 801 note), no court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

The Ninth Circuit Court of Appeals has established a five element test for determining whether the court lacks jurisdiction under the MCA: 1) the action is against the "United States or its agents"; 2) the action relates to "any aspect of the detention, transfer, treatment, trial or conditions of confinement of an alien who is or was detained by the United States"; 3) the action relates to an alien who was "determined by the United States to have been properly detained as an enemy combatant" or an alien awaiting such a determination; 4) the action is other than an application for writ of habeas corpus; and 5) the action does not qualify for an exception under the Detainee Treatment Act. *Hamad v. Gates*, 732 F.3d 990, 995 (9th Cir. 2013).  It appears the parties agree the second, fourth, and fifth requirements for application of subsection (e)(2) are met.  However, Plaintiffs contest the first and third requirements.  Plaintiffs contend Defendants are not "agents" of the United States and Plaintiffs were never "determined by the United States to have been properly detained as an enemy combatant."

///

ORDER - 4

### B. Agents of the United States

Defendants' Motion spends only a page and a half discussing this issue, and seems to present as a given fact that Jessen and Mitchell were "agents" of the United States. (ECF No. 105, p. 7-8). Defendants rely on legislative history, a statement by Senator Harkin, **in opposition to the bill**, stating it would immunize the CIA and "any contractors with the CIA" for acts of torture. Defendants also argue the Complaint alleges they were acting pursuant to a contract with the CIA.

Plaintiffs vigorously contest Defendants were "agents" of the United States. They argue the MCA provision was intended to apply only to military service members and government employees. (ECF No. 120, p. 1). Plaintiffs argue Defendants were independent contractors, and not agents. Plaintiffs argue agency cannot be presumed, and the burden is on Defendants to establish it, citing *Atrium of Princeton v. NLRB*, 684 F.3d 1310, 1315 (D.C. Cir. 2012)("The party asserting that a relationship of agency exists generally has the burden in litigation of establishing its existence"); and *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1296 (5th Cir. 1994)("Agency is never to be presumed; it must be shown affirmatively."). Convincingly, the Plaintiffs cite to the contracts between the CIA and Defendants, which repeatedly state the "legal status under this agreement is that of Independent Contractor". (ECF No. 120, p. 5 citing ECF No. 84-1). Defendants do not point to any contractual language establishing an agency relationship.

Plaintiffs argue even if the court were inclined to consider legislative history, the Defendants reliance on a statement of Senator Harkin, who opposed the bill, is not probative. The court concurs with Plaintiffs on this point.

Plaintiffs further argue "Congress knows how to extend statutes to independent contractors when it wishes to do so" (ECF No. 120 p. 7-8) and cites several statutes: 28 U.S.C. 1494 (granting jurisdiction over accounts of "any officer or agent of, or contractor with, the United States"); 31 U.S.C. § 3729(b)(2) (False Claims Act applies to claims "presented to an officer, employee, or agent of the United States" or "a contractor,

grantee, or other recipient"); 30 U.S.C. § 1716 (defining covered "person" as "any agent or employee of the United States and any independent contractor").  These examples illustrate there may be important distinctions between a "contractor" and an "agent".  Congress did not use the word "contractor" in the MCA.

Defendants are referred to an "independent contractors" in their contracts with the Government and not as "agents".  However, "whether a relationship is characterized as an agency in an agreement between parties or in the context of the industry or popular usage is not controlling." *Restatement (Third) of Agency* § 1.02 (2006).  Rather, "agency", as defined at common law, "posits a consensual relationship in which one person, to one degree or another or respect or another, acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person." *Id*. at § 1.01, Comment (c).  Plaintiffs argue Defendants did not have the power to affect the legal rights and duties of the Government.  Defendants focus on the control issue, and argue Defendants were acting under the control of the Government.

The Restatement states "the common term 'independent contractor' is equivocal in meaning and confusing in usage because some termed independent contractors are agents while others are nonagent service providers." *Id*.  The Ninth Circuit, albeit in a different context, has agreed the term is equivocal: "Unlike employees, independent contractors are not ordinarily agents." *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010).  However, independent contractor status "does not preclude a finding the speaker is also an agent for some purposes." *Id*.

Defendants' Reply brief contains a more substantive discussion of the agency issue, and Defendants contend "whether an agency relationship exists is a legal conclusion made after an assessment of the facts of the relationship and the application of the law of agency to those facts." (ECF No. 126, p. 1).  Defendants also argue the Plaintiffs' use of a blanket rule that independent contractors are not agents "ignores, and does not discuss, the facts showing that Defendants acted on behalf of and subject to the

control of the United States." (ECF No. 126, p. 3).  Defendants have not submitted any evidence to the court to convincingly establish an agency relationship.  While an 'independent contractor' could be in an agency relationship with a principal whom it has contracted with, Defendants have not presented such facts.  Defendants submitted over 170 pages of documents with the Motion to Dismiss (at ECF No. 106), but those documents were directed to the issue of enemy combatant status, not agency.  Consideration of the Complaint, and the contractual language, does not establish an agency relationship.  It is telling the Defendants, who wish to establish the nature of the legal relationship between themselves and the Government, did not cite to the contracts in their Motion.  The contracts (at ECF No. 84) also contain indemnification provisions which may have been deemed unnecessary had the parties contemplated an agency relationship that would entitle Defendants to governmental immunities.  "The law presumes that a party acts for himself, and the party asserting an agency relationship bears the burden of proving the agency." *MGIC Indem. Corp. v. Moore*, 951 F.2d 361 (9th Cir. 1991)(unpublished).  Defendants have not established, based on the record submitted with the Motion to Dismiss, they were "agents" of the United States.

### C. Enemy Combatant Status

The central focus of the briefing and evidentiary submissions is whether Plaintiffs were determined to be "enemy combatants."  The issue of enemy combatant status is unique as to each of the three Plaintiffs.  The critical statutory language is:"is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination." 28 U.S.C. § 2241(e)(2).  Plaintiffs argue the determination must be made by a military tribunal, a Combatant Status Review Tribunal ("CSRT"), to trigger the jurisdiction-stripping portion of the statute.  Defendants argue no tribunal finding is required, and appear to argue any reference to an individual as a "combatant" in a governmental memo, or reference to affiliation with a hostile organization, suffices.

ORDER - 7

In *Janko v. Gates*, 741 F.3d 136 (D.C. Cir. 2014), the Court of Appeals addressed the meaning of "the United States" in the phrase "determined by the United States to have been properly detained". The court found "a determination by the United States is one made by the Executive Branch." *Id.* at 141. Janko was evaluated twice by CSRT's and found to be lawfully detained as an enemy combatant. Thereafter, he obtained habeas review in federal district court, and the petition was granted. Janko argued he was therefore never properly detained as an "enemy combatant". The court disagreed, noting "properly does not modify determined, it modifies detained." *Id.* at 143. The court found a determination by a CSRT was a determination by the United States: "we are convinced that 'determined by the United States to have been properly detained as an enemy combatant' refers to a determination by the executive-branch tribunal the Congress knew was making that determination." *Id.* at 145. The court found the language of the Detainee Treatment Act and MCA demonstrated that Congress was well aware of the Executive Branch's practice of using CSRTs to make enemy combatant status determinations when Congress drafted and passed the MCA. *Id.*

In *Boumediene v. Bush*, 553 U.S. 723 (2008), the Supreme Court struck down as unconstitutional § 2241(e)(1) which stripped the courts of jurisdiction to hear petitions for writ of habeas corpus filed by an alien detained by the United States and who had been determined to have been properly detained as an enemy combatant. The court found the statute to be an unconstitutional suspension of the writ of habeas corpus and the petitioners who were aliens, were found to "have the habeas corpus privilege." *Id.* at 732. The Supreme Court further stated: "Because the Constitution's separation-of-powers structure, like the substantive guarantees of the Fifth and Fourteenth Amendments, protects persons as well as citizens, foreign nationals who have the privilege of litigating in our courts can seek to enforce separation-of-powers principles." *Id.* at 743 (internal citations omitted).

The Court in *Boumediene* also discussed the history of legislative and executive

ORDER - 8

branch response to the 9/11 terror attacks, including the creation of CSRT.  In so doing, the court recognized the procedural protections afforded at a CSRT hearing are "limited" and "fall well short of the procedures and adversarial mechanisms that would eliminate the need for habeas corpus review." *Id.* at 767.  At the CSRT the Government's "evidence is accorded a presumption of validity." *Id.*  The Court further stated: "Although we make no judgment whether the CSRTs, as currently constituted, satisfy due process standards, we agree with petitioners that, even when all parties involved in this process act with diligence and in good faith, there is a considerable risk of error in the tribunal's findings of fact." *Id.* at 785. The Supreme Court has thus left open the question of whether a CSRT proceeding satisfies Due Process and found there is a "considerable risk of error" in  a CSRT determination.  Plaintiffs argue a CSRT determination of "enemy combatant" status is necessary to invoke the jurisdiction stripping provision of the MCA.  Defendants argue something less than a CSRT determination is sufficient, and a CSRT is not a required.

In *Boumediene* the Supreme Court stated § 2241(e) was unconstitutional. *Id*. at 795 ("The only law we identify as unconstitutional is MCA § 7, 28 U.S.C. § 2241(e)). Subsection (e) has two parts: (1) dealing with habeas corpus, and (2) claims such as those at issue in this case.  Courts, including the Ninth Circuit, have found that sub-section (2) can be severed and survived *Boumediene*.  See *Hamad v. Gates*, 732 F.3d 990 (9th Cir. 2013)("Although *Boumediene* did not expressly differentiate between 2241(e)(1) and (2), the logic and context of the opinion make clear that the Supreme Court was addressing only 2241(e)(1).")

With this background, the court now addresses the enemy combatant status issue as to each of the three Plaintiffs:

**1. Salim** - Defendants argue Salim is referred to in documents produced by the CIA as "combatant", "Low Level Enemy Combatant", and "HLEC", which Defendants state "presumably stands for High Level Enemy Combatant." (ECF No. 105, p. 2).

ORDER - 9

Defendants admit Salim was later reclassified as "No Longer Enemy Combatant." Defendants contend these classifications were made by an Enemy Combatant Review Board. (*Id.*).

Plaintiffs contend Salim was found not to be an enemy combatant by the Unlawful Enemy Combatant Review Board ("UECRB") at Bagram Airforce Base, and whatever preliminary determination there may have been concerning Salim's status is not sufficient to strip the court of jurisdiction. On this point, the Fourth Circuit's *now vacated* decision in *al-Marri v. Wright*, 487 F.3d 160 (4th Cir. 2007), although not controlling, is relevant and of some persuasive value. There the court stated: "The statute's use of the phrase 'has been determined ... to have been properly detained' requires a two-step process to remove 2241 jurisdiction: 1) an initial decision to detain, followed by 2) a determination by the United States that the initial detention was proper." *Id.* at 169. The Fourth Circuit required an Executive Branch tribunal decision, subsequent to the initial decision, finding the detention was proper.

The documentary evidence concerning Salim suggests conflicting results. Defendants cite to (ECF No. 106, Ex. B) appearing to recommend Salim be detained as a "low level enemy combatant". Then Defendants contend in March 2007, an Enemy Combatant Review Board designated Salim as a "high level enemy combatant". (ECF No. 106, Ex. D). However, Defendants admit the very next year, in 2008, Salim was redesignated as "no longer enemy combatant" and released. (*Id.* at Ex. I). The report states a conclusion "that although [Salim] was an associate of the conspirators, he was uniformly considered too addicted to drugs to be trusted with operations." (*Id.*)

This presents a difficult question of conflicting determinations by the Executive Branch. It also raises the following questions: 1) is a two-step determination required as stated by the Fourth Circuit panel in *al-Marri v. Wright*; 2) is a CSRT determination required; and 3) what is the result of multiple inconsistent determinations by the Executive Branch? In *Jawad v. Gates*, 832 F.3d 364, 368 (D.C. Cir. 2016), the court

ORDER - 10

stated: "We assume Jawad is right, as a matter of law, that the government could override a prior determination that an alien had been properly detained by issuing a new determination to the contrary in habeas litigation."  However, the court seemed to draw a distinction: "It never said that Jawad was not properly detained, only that the United States would no longer treat him as such." *Id*.

From the documents submitted, there are references to Salim as "low level" enemy combatant, "HLEC" (presumably "high level" enemy combatant), and as no longer an enemy combatant.  The second review by the Review Board found him to not be an enemy combatant, pose no danger to the United States, and directed his release.  Thus, if a two-step determination is required, the second determination reversed the first, and the third requirement for the MCA to apply would not be satisfied.  However, if the 2007 determination is sufficient determination of enemy combatant status, then the court could find the enemy combatant element satisfied as to Salim.  The court need not definitively resolve the issue of enemy combatant status at this juncture, as Defendants have not established they were acting as agents of the United States.  All five requirements must be met for the MCA to apply.

2. **Soud** - Defendants point to no documentation referring to Soud as an "enemy combatant".  Defendants rely on documents referring to him as a "probable member of Libyan Islamic Fighting Group," calling his capture a success in the war on terrorism, stating he "may have important information about al-Qa-ida network" and that he may pose a threat to U.S. persons and interests. (ECF No. 105, p. 3).  Defendants admit none of the documents they have obtained in discovery "use the specific words 'enemy combatant'" to describe Soud, but contend the documents "make it clear that the CIA determined that it was proper to detain and then transfer, and then render, Soud." (*Id*. at 17).  Defendants contend "because the CIA determined that it was proper to detain Soud based on his membership in a terrorist group, this Court lacks jurisdiction over his claims." (*Id*.).

ORDER - 11

Section 2241(e)(2) does not state this court lacks jurisdiction to hear the claims of anyone thought by the CIA to be a member of a terrorist group. The statute states: "...has been determined by the United States to have been properly detained as an enemy combatant." Defendants point to no evidence Soud was ever determined to be an enemy combatant by an Executive Branch tribunal. Defendants' reading of the statute would allow an agency memo's mere reference to a possible affiliation with a terrorist organization to strip the federal courts of jurisdiction to hear torture claims. Such a reading would raise serious constitutional concerns. Defendants have failed to prove Soud was ever determined by the United States to have been properly detained as an "enemy combatant".

**3. Gul Rahman -** Defendants rely upon a CIA Inspector General report from 2005, three years after Rahman's death in U.S. custody, to support the conclusion that he was an "enemy combatant". The Report states Rahman was a "suspected Afghan extremist associated with the Hezbi Islami Gulbuddin". (ECF No. 106-11). It further states that following Rahman's rendition to COBALT six cables were generated: "Only one of these cables, which reported the chronology of Rahman's death, provided a characterization of Rahman, describing him as an 'enemy combatant.'" (ECF No. 106-11, at p. 8). Defendants have presented no evidence Gul Rahman was determined to be an enemy combatant prior to his death.

Plaintiffs argue no determination was made as to Rahman's status. (ECF No. 120, p. 20). In Reply, Defendants acknowledge no formal determination as to status was made prior to his death, but that Rahman could be considered to be "awaiting such determination" within the terms of § 2241(e)(2). The Complaint alleges Rahman was captured on October 29, 2002, and rendered by the CIA on November 5, 2002. (ECF No. 1, ¶¶ 157-58). Rahman died in custody on November 20, 2002. He was in CIA custody for less than 1 month, which may not have been sufficient time for a formal Executive Branch tribunal determination. Also, 2002 was prior to the use of CSRTs and prior to the

ORDER - 12

1  enactment of the MCA in 2006. Defense counsel stated at oral argument CSRTs came

2  into use in July 2004.

3      There is little case law construing the "awaiting such determination" language in

4  2241(e)(2). The most extensive discussion is in *al-Marri v. Wright*, 487 F.3d 160 (4th Cir.

5  2007), vacated by en banc review. There the court rejected the Government's argument

6  that they planned to provide petitioner with a CSRT in the future. The court noted al-

7  Marri had been in custody four years: "If al-Marri is 'awaiting' a CSRT it is only because

8  he might, through the good graces of the Executive, some day receive one. But he might

9  not." *Id.* at 173. The court further stated the phrase "awaiting such determination"

10  applies to "alien detainees captured and held outside the United States–whom Congress

11  both believed had no constitutional right to habeas and expected would receive a CSRT."

12  *Id.* Gul Rahman was an alien detainee captured and held outside the United States.

13  However, as CSRTs were not in use at the time of his death, it is not reasonable to

14  consider him "awaiting such determination" from a CSRT or other Executive Branch

15  tribunal. Defendants have presented no evidence Rahman was determined by the United

16  States to have been properly detained as an enemy combatant prior to his death.

17  Defendants have not satisfied the court the "awaiting such determination" language

18  should be read so broadly as to encompass the alleged facts concerning Rahman.

19      **V. Conclusion**

20      This is not a case where the United States is a named party. Nor have Plaintiffs

21  brought suit directly against the CIA, military servicemembers, or governmental

22  employees. Instead this is an action against two individuals who were working as

23  independent contractors with the CIA. Defendants assert an agency relationship with the

24  Government, and thus have the burden of proving it. They have not done so. All of the

25  documentary evidence submitted with the Motion to Dismiss was directed at the issue of

26  "enemy combatant" status, not at the agency claims. (See ECF No. 106 and attachments).

27  Defendants have not relied on any of the language from their contracts with the

28  ORDER - 13

Government in arguing for an "agency" determination.  Defendants belatedly, at the time of oral argument, requested an evidentiary hearing, but did not convincingly argue what evidence would be presented.  Plaintiffs opposed the request.  On the instant record, the agency relationship is not established, and thus the Motion To Dismiss must be denied.

None of the three Plaintiffs was determined by a Combatant Status Review Tribunal to be an "enemy combatant."  Each of the three Plaintiffs' status determinations is unique.  Salim was initially determined to be an enemy combatant and then later determined by the Unlawful Enemy Combatant Review Board at Bagram Airforce Base to not pose a threat to the United States. (See ECF No. 121-1).  The Executive Branch made two conflicting, but temporally separate, determinations as to Salim's status.  Soud was never determined by any tribunal to be an "enemy combatant".  Defendants have not presented any documentation that Soud was classified as an enemy combatant. The MCA clearly does not strip jurisdiction over Soud's claims.  Gul Rahman died approximately one month after he was captured and transferred to United States custody.  No evidence has been presented that a status determination was made prior to his death, and none was made by a CSRT.  Gul Rahman was referred to as "enemy combatant" in a CIA Report in 2005, more than two years after his death.  The MCA does not strip jurisdiction over Gul Rahman's claims unless the court finds he was "awaiting such determination" within the meaning of 2241(e)(2).  The court does not so find.

**IT IS HEREBY ORDERED**:

Defendants' Motion to Dismiss (ECF No. 105) is **DENIED**.

The Clerk shall enter this Order and furnish copies to counsel.

Dated January 27, 2017.

s/ Justin L. Quackenbush<br>
JUSTIN L. QUACKENBUSH<br>
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 14