Emily Chiang, WSBA No. 50517
echiang@aclu-wa.org
AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, WA 98164
Phone: 206-624-2184

Dror Ladin (admitted *pro hac vice*)
Steven M. Watt (admitted *pro hac vice*)
Hina Shamsi (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION

Lawrence S. Lustberg (admitted *pro hac vice*)
Kate E. Janukowicz (admitted *pro hac vice*)
Daniel J. McGrady (admitted *pro hac vice*)
Avram D. Frey (admitted *pro hac vice*)
GIBBONS P.C.

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SULEIMAN ABDULLAH SALIM, MOHAMED AHMED BEN SOUD, OBAIDULLAH (AS PERSONAL REPRESENTATIVE OF GUL RAHMAN), <br><br> Plaintiffs, <br><br> v. <br><br> JAMES ELMER MITCHELL and JOHN "BRUCE" JESSEN <br><br> Defendants. | No. 15-cv-0286 (JLQ) <br><br> PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE <br><br> NOTE ON MOTION CALENDAR: July 28, 2017 AT 9:30 A.M. Spokane, Washington |

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO EXCLUDE
No. 15-CV-286 (JLQ)
Page | i

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## INTRODUCTION

Though Defendants purport to respond to Plaintiffs' opposition to summary judgment, they actually seek to exclude the entire Senate Select Committee on Intelligence Study of the Central Intelligence Agency's Detention and Interrogation Program (the "SSCI Report") "at trial." In doing so, Defendants do not even attempt to address the five brief mentions of findings from the SSCI Report that Plaintiffs cite, and ignore the procedure for raising evidentiary objections set forth in the Local Rules. Defendants' motion should be denied because Plaintiffs' citations to the SSCI Report are admissible: they satisfy the public records hearsay exception–including its trustworthiness requirement–and/or are undisputed or supported by other admissible evidence.

## ARGUMENT

### I.  Defendants' Motion Violates the Court's Scheduling Order.

Defendants' motion is procedurally improper. This Court has set a strict 25-page limit for motions addressing "all expected trial evidentiary issues…." ECF No. 187 at ¶ 3. In an obvious effort to circumvent that page limit, Defendants here move to exclude the entire SSCI Report—not only for purposes of summary judgment but also "at trial." ECF No. 198 at 1. Defendants make this improper purpose plain by failing to even address the five specific citations to the SSCI Report cited by Plaintiffs in their opposition to Defendants' statement of facts. ECF No. 194 ¶¶ 15, 27, 49, 81, 86, 208. Defendants ignore that the Local Rules provide the mechanism for raising evidentiary objections in the summary judgment context. *See* LR 56.1(c) ("Following the fact and record

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO EXCLUDE
No. 15-CV-286 (JLQ)
Page | 1

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

citation, the moving party may briefly describe any evidentiary reason the opposing party's fact is disputed."). The Court should reject Defendants' attempt to secure additional briefing in violation of the Scheduling Order.

## II.  The SSCI Report Propositions Cited by Plaintiffs are Admissible.

As Defendants acknowledge, ECF No. 198 at 5, Federal Rule of Evidence 803(8) provides a hearsay exception for a "record or statement of a public office if: (A) it sets out . . . factual findings from a legally authorized investigation . . . and (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Here, the specific facts from the SSCI Report cited by Plaintiffs satisfy these requirements, and are thus admissible and properly considered.

### A. The SSCI Report Propositions are Admissible Factual Findings.

Defendants do not dispute that Plaintiffs' citations to the SSCI Report are "factual findings from a legally authorized investigation"; indeed, they concede that portions of the Report "may contain 'factual findings[.]'" ECF No. 198 at 6. This is consistent with the "broad approach to admissibility" under Rule 803(8)(A)(iii) set forth by the United States Supreme Court. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169-70 (1988) ("As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible . . . ."). And beyond the Rule, each proposition at issue is properly considered by the Court either because it is undisputed or because it is supported by other admissible evidence.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO EXCLUDE
No. 15-CV-286 (JLQ)
Page | 2

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1

2    *First*, Plaintiffs cite the SSCI Report in opposition to Defendants' Facts

3    49 and 81 for the fact that FBI agents successfully elicited "critical information"

4    from Abu Zubaydah without resorting to torture. ECF No. 194 ¶¶ 49, 81. This

5    conclusion is unobjectionable: Defendants concede this fact, *see* ECF No. 201

6    ¶¶ 49, 81, and the SSCI's finding is further supported by the findings of a Justice

7    Department Office of Professional Responsibility investigation, which is

8    admissible and cited repeatedly by Defendants. *See* ECF No. 176-11 at U.S.

9    000640; ECF No. 170 ¶¶ 64, 150, 151, 158 (citing DOJ report).

10

11   *Second*, Plaintiffs cite the SSCI Report in opposition to Defendants' Fact

12   15 for the proposition that Defendants' rate of $1,800 per day was "four times"

13   what other interrogators were paid. ECF No. 194 ¶ 15. Plaintiffs included this

14   fact only to rebut Defendant Mitchell's inadmissible and unsupported assertion

15   that other interrogators told him that his rate was lower than theirs. Defendants'

16   contracts confirm their rate, and they do not identify contrary evidence to the

17   finding that CIA interrogators were paid 1/4 of Defendants' contract rate.

18   *Third*, Plaintiffs cite the SSCI Report in response to Defendants' Fact 27

19   for the proposition that there was not a consistent definition of the term "HVD"

20   in the CIA program. ECF No. 194 ¶ 27. But the shifting definition of HVD is

21   also apparent from other admissible evidence in the record, including

22   Defendants' own testimony. *See* ECF No. 205-4 at 200:10-201:13 (noting that

23   the definition of HVD "evolved over time" and that he did not "know when that

24   evolution solidified . . . ."). This factual finding is, then, unobjectionable.

25

26

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO EXCLUDE
No. 15-CV-286 (JLQ)
Page | 3

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1
2          *Fourth*, Plaintiffs cite the SSCI Report in response to Defendants' Fact 86
3
   for the proposition that the CIA's Office of Medical Services ("OMS") did not
4
   opine as to whether Defendants' methods would cause suffering. ECF No. 194 ¶
5
   86. Again, the Report's conclusion is supported by other evidence in the record,
6
   including the CIA's Inspector General Report, which Defendants cite
7
   repeatedly. *See* ECF No. 176-25 at 001360 (CIA report confirming SSCI finding
8
   as to OMS's role); ECF No. 170 ¶¶ 16, 18, 19, 23 (citing report).
9
10          *Fifth*, Plaintiffs cite the SSCI Report in opposition to Defendants' Fact
11
   208 for the proposition that Defendants authored a CIA cable recommending
12
   that the aggressive phase of Abu Zubaydah's interrogation be used as a
13
   "template." ECF No. 194 ¶ 208. The SSCI's conclusion that Defendants
14
   authored this cable is an admissible factual finding based on its review of "CIA
15
   records[.]" ECF No. 195-20 at 46. Although Defendants now disclaim any role
16
   in CIA cables sent in 2002, contemporaneous records confirm the SSCI's
17
   finding that Defendants—indisputably members of the interrogation team—
18
   drafted cables during this period. ECF No. 176-12 at 001049 (Defendant Jessen
19
   admitting he "put a recommended plan in a cable"); ECF No. 195-11 at 001294
20
   (CIA report confirming a 2002 "cable was prepared by Jessen."); *see also* ECF
21
22
   No. 204 ¶ 53 ("template" cable was sent by interrogation team).
23    **B. The SSCI Report is Trustworthy.**
24          Although Defendants offer a "Chart of Inaccuracies," ECF No. 199-3,
25
   they are unable to identify a single error in the SSCI Report. Indeed, as set forth
26
   above, the statements at issue—far from inaccurate—are undisputed or

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

corroborated. Nonetheless, Defendants strain to characterize accurate statements—such as the undisputed fact that neither Defendant had ever interrogated a prisoner before Abu Zubaydah—as errors. But as Plaintiffs' attached chart shows, Defendants' efforts are fruitless: their own admissions confirm their lack of interrogation experience, and the remaining "inaccuracies" they claim are similarly flawed. *See* Declaration of Lawrence S. Lustberg, Exh. A. Similarly, although the CIA Response and the Minority Report may disagree with certain of the Report's conclusions, neither identifies *factual* errors that could provide a basis for dismissing the entire report as untrustworthy. Nor, as shown below, do any of the trustworthiness factors favor the Report's exclusion. Particularly given that "[t]he presumption is one of trustworthiness, with the burden of establishing untrustworthiness on the opponent of the evidence," *Keith v. Volpe*, 858 F.2d 467, 481 (9th Cir. 1988), Defendants' arguments must be rejected.

### 1. The SSCI Report was Timely.

On January 22, 2009, President Obama signed Executive Order 13491—Ensuring Lawful Interrogations, requiring that the CIA close its prisons and that the International Committee of the Red Cross be granted access to all U.S. prisoners. Soon after, "[i]n March 2009, the Senate Select Committee on Intelligence announced that it would conduct an oversight review of the CIA's highly controversial, but then-defunct, detention and interrogation program." *ACLU v. C.I.A.*, 823 F.3d 655, 659 (D.C. Cir. 2016). The Senate investigation, which involved review of "millions of pages of CIA documents," was completed

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO EXCLUDE
No. 15-CV-286 (JLQ)
Page | 5

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

in 2012 and the SSCI then transmitted drafts "of the 6,000–plus page Full Report and the 500–plus page Executive Summary" to the executive branch for "comments and proposed edits." *Id.* at 660. The CIA produced a response on June 27, 2013; less than a year later, the SSCI responded to the executive's comments, finalized the report, and transmitted the Executive Summary to the executive for declassification and public release. As courts have explained, this is well within the bounds of timeliness:

> [A] Congressional report prepared twelve years after the events at issue occurred was reliable and admissible under Rule 803(8)(C), where the Congressional task force "had direct access to voluminous documents" and independently determined whether the evidence was corroborated and had probative value. The Senate Committee here similarly had access to large volumes of records and independently evaluated those records in crafting its final report. Hence, as in *McFarlane*, Congress's failure to act immediately after the events at issue does not undermine the report's reliability.

*Barry v. (Iron Workers) Pension Plan*, 467 F. Supp. 2d 91, 100 (D.D.C. 2006); *see also Gentile v. County of Suffolk*, 129 F.R.D. 435, 451 (E.D.N.Y. 1990) ("[P]articularly where, as here, the investigators depend heavily upon documents, the passage of time does not appreciably detract from reliability.").

## 2. The SSCI was Qualified to Investigate the CIA.

Defendants argue that the Senate Select Committee on Intelligence was unqualified to investigate the CIA. But under our constitutional system, Senators are charged with investigating and overseeing the executive branch's intelligence activities. *See* Declaration of Senator Ron Wyden ("Wyden Decl.") ¶¶ 1–2. The SSCI was specifically established to address "the need for an effective legislative oversight committee which has sufficient power to resolve

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO EXCLUDE
No. 15-CV-286 (JLQ)
Page | 6

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

such fundamental conflicts between secrecy and democracy." *Morley v. C.I.A.*, 508 F.3d 1108, 1117 n.2 (D.C. Cir. 2007). And courts routinely find the investigations of such legislative oversight committees to be trustworthy. *See, e.g.*, *Hobson v. Wilson*, 556 F. Supp. 1157, 1181 (D.D.C. 1982) (admitting report of predecessor committee to the SSCI); *Barry*, 467 F. Supp. 2d at 101. Moreover, the Congressional staff assisting the SSCI were well-qualified: a lead investigator was formerly an intelligence analyst at the FBI with investigative experience, and was praised by a "former GOP colleague" as "a very careful examiner of a mass of evidence." Adam Goldman and Ellen Nakashima, *Investigation into CIA's interrogation program encountered a 'fog of secrecy'*, WASH. POST Dec. 9, 2014. The other lead investigator was a former CIA attorney who, according to former CIA counsel John Rizzo, "handled significant cases"; she later served as the Army's top lawyer. *Id*.; *see also* Wyden Decl. ¶ 4.

Contrary to Defendants' argument, the Senators who signed the Minority Report did not claim that other Senators and their staff lacked expertise to "undertake a proper investigation." ECF No. 198 at 7. In fact, the pages that Defendants cite say nothing about the qualifications of the SSCI or its staff. Though Defendants take the position that Congress should not investigate the CIA, this was obviously not what the Minority Report said. Nor should the Court accept what is fundamentally an attack on the separation of powers.

### 3. CIA Classification Prevented Public Hearings.

Defendants' objection to the lack of public hearing is not well-taken. Prior to the declassification and release of the SSCI Report, the entire factual record

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO EXCLUDE
No. 15-CV-286 (JLQ)
Page | 7

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

on which it is based was, as Defendants know, classified by the executive branch, making public hearings impossible. Indeed, the effects of CIA secrecy reached the federal courts: as this Court has recognized, both the Fourth and Ninth Circuits barred cases concerning the CIA program before the Report was released: ECF No. 188 at 4 ("In both *El-Masri* and *Mohamed* . . . application of the state secrets doctrine required dismissal of each case. However, both *El-Masri* and *Mohamed* were opinions issued years before the Senate Select Committee on Intelligence (SSCI) issued its report in 2014 on the CIA enhanced interrogation program."). Nor, in any event, are hearings a requirement for trustworthiness. *See Baker v. Elcona Homes Corp.*, 588 F.2d 551, 558 (6th Cir. 1978) ("We do not believe that a formal hearing is a Sine qua non of admissibility under Rule 803(8)(C) when other indicia of trustworthiness are present."); *U.S. v. Am. Tel. & Tel.*, 498 F. Supp. 353, 365 (D.D.C. 1980) (same).

### 4. The SSCI Report is Not Biased.

Defendants' assertion that the Report is a partisan document and should therefore be disregarded is both factually and legally incorrect. As a factual matter, the SSCI Report was not one-sided; it was supported by Senators from both parties. The Committee approved the Study with a bipartisan vote of 9-6, with Senator Olympia Snowe (R-ME) voting in favor. In addition, Senator McCain (R-AZ), an *ex officio* member of the Committee, delivered a floor statement in support of the Report, calling it "a thorough and thoughtful study of practices that I believe not only failed their purpose – to secure actionable intelligence to prevent further attacks on the U.S. and our allies – but actually

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE
No. 15-CV-286 (JLQ)
Page | 8

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1
2
damaged our security interests, as well as our reputation as a force for good in
3
the world," adding:

4
    I commend Chairman Feinstein and her staff for their diligence in
5
    seeking a truthful accounting of policies I hope we will never resort to
    again. I thank them for persevering against persistent opposition from
6
    many members of the intelligence community, from officials in two
    administrations, and from some of our colleagues.
7
160 Cong Rec. S6410–11 (Dec. 9, 2014). And the SSCI, in a bipartisan 11-3
8
vote, decided to declassify and publicly release the Report. Wyden Decl. ¶ 6.
9
10
    Likewise, as a legal matter, the mere existence of a Minority Report does
11
not undermine the trustworthiness of the SSCI Report. Courts routinely admit
12
reports even where a minority objects to some of its conclusions. *See, e.g.*,
13
*Mariani v. United States*, 80 F. Supp. 2d 352, 361 (M.D. Pa. 1999) (admitting
14
both majority and minority reports). For example, the Church Committee Report
15
on Intelligence Activities and the Rights of Americans was not unanimous;
16
several Senators criticized and refused to sign it. *See* S. Rep. No. 94-755, 94th
17
Cong., 2d Sess., Book II at 367–394 (1976). Nonetheless, the Church
18
Committee's findings as to the FBI's COINTELPRO program, which were
19
"drawn directly from internal FBI documents" were admitted into evidence over
20
objections similar to these. *Hobson*, 556 F. Supp. at 1181 (noting that "the
21
quality of the Report is perhaps evidenced by the fact that similar portions of the
22
same Report have been relied upon by this Court and in other circuits for the
23
background they have provided").
24
25
    Defendants are incorrect that the lack of interviews renders the Report
26
biased. As Defendants are well aware, the SSCI could not conduct its own

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO EXCLUDE
No. 15-CV-286 (JLQ)
Page | 9

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

interviews because the CIA refused to require personnel to meet with the Committee while a Department of Justice criminal investigation was ongoing. Wyden Decl. ¶ 7. But this does not show bias; indeed, a case upon which Defendants rely *rejected* the admission of a report specifically because it was "based upon a dubious, highly charged process of essentially 'interviewing'" interested parties." *Anderson v. New York*, 657 F. Supp. 1571, 1579 (S.D.N.Y. 1987). Here, by contrast, the SSCI reviewed CIA interview transcripts and other original documents produced contemporaneously, rather than self-serving, after-the-fact testimony. ECF No. 198 at 1 (acknowledging Report "relied on transcripts from interviews conducted by the CIA inspector general and others while the Program was ongoing and shortly thereafter"); Wyden Decl. ¶¶ 5, 7.

In short, Defendants identify no "bias" beyond their assertion that Senator Feinstein's disapproval of torture (which has been prohibited for centuries) somehow undermines every factual finding of the SSCI. Leaving aside that opposition to torture is hardly a "bias," the Report was adopted and declassified on a bipartisan basis, and Defendants fail to identify any inaccuracy with the factual findings that Plaintiffs cite.

## CONCLUSION

The Senate Report findings Plaintiffs cite are based on meticulous review of millions of internal CIA documents. Like sections of the Church Committee Report "drawn directly from internal FBI documents" and found admissible in spite of individual Senators' opposing views, this evidence should be admitted.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO EXCLUDE
No. 15-CV-286 (JLQ)
Page | 10

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

DATED: July 10, 2017          By:     s/ Lawrence S. Lustberg
                                      Lawrence S. Lustberg (admitted *pro hac vice*)
                                      Kate E. Janukowicz (admitted *pro hac vice*)
                                      Daniel J. McGrady (admitted *pro hac vice*)
                                      Avram D. Frey (admitted *pro hac vice*)
                                      GIBBONS P.C.
                                      One Gateway Center
                                      Newark, New Jersey 07102

                                      s/ Dror Ladin
                                      Dror Ladin (admitted *pro hac vice*)
                                      Steven M. Watt (admitted *pro hac vice*)
                                      Hina Shamsi (admitted *pro hac vice*)
                                      AMERICAN CIVIL LIBERTIES
                                      UNION FOUNDATION
                                      125 Broad Street, 18th Floor
                                      New York, New York 10004


                                      Emily Chiang, WSBA No. 50517
                                      echiang@aclu-wa.org
                                      AMERICAN CIVIL LIBERTIES UNION
                                      OF WASHINGTON FOUNDATION
                                      901 Fifth Avenue, Suite 630
                                      Seattle, WA 98164
                                      Phone: 206-624-2184

                                      Paul Hoffman (admitted *pro hac vice*)
                                      SCHONBRUN DESIMONE SEPLOW
                                      HARRIS & HOFFMAN, LLP
                                      723 Ocean Front Walk, Suite 100
                                      Venice, CA 90291

                                      *Attorneys for Plaintiffs*

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of July, 2017, I caused to be electronically filed and served the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Andrew I. Warden
andrew.warden@usdoj.gov

*Attorney for the United States of America*

Brian S. Paszamant:
Paszamant@blankrome.com

Henry F. Schuelke, III:
Hschuelke@blankrome.com

James T. Smith:
Smith-Jt@blankrome.com

Christopher W. Tompkins:
Ctompkins@bpmlaw.com

*Attorneys for Defendants*

*s/ Lawrence S. Lustberg*
Lawrence S. Lustberg (admitted *pro hac vice*)
LLustberg@gibbonslaw.com

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO EXCLUDE
No. 15-CV-286 (JLQ)
Page | 12

AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON
FOUNDATION
901 Fifth Ave, Suite 630
Seattle, WA 98164
(206) 624-2184